# IN THE UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

_____

Case No.: 23-12241

District Court Case No.: 22-cv-22526-KMM

_____

SHARON GALLIMORE,

Appellant,

vs.

CITY OF OPA-LOCKA,

Appellee,

_____/

_____

## APPELLEE'S ANSWER BRIEF
_____

Christopher J. Stearns
Florida Bar No.: 557870
Jonathan H. Railey
Florida Bar No.: 111717
JOHNSON, ANSELMO, MURDOCH,
BURKE, PIPER & HOCHMAN, P.A.
*Attorneys for Appellee*
2455 East Sunrise Boulevard, Suite 1000
Fort Lauderdale, FL 33304
(954) 463-0100 – Telephone
(954) 463-2444 – Facsimile

<u>**CERTIFICATE OF INTERESTED PERSONS**</u>
<u>**AND CORPORATE DISCLOSURE STATEMENT**</u>

**I.      Corporate Disclosures**

City of Opa-Locka, Florida, is a Florida municipal corporation. City of Opa-Locka, Florida, has no subsidiaries or related business entities.

**II.     Interested Parties**

1.      City of Opa-Locka - Appellee

2.      Cobb, Candice - Attorney for Appellee

3.      Fleischer Louis, Lauren - United States Magistrate Judge

4.      Florida League of Cities, Inc.

5.      Florida Municipal Insurance Trust

6.      Gallimore, Sharon - Appellant

7.      Johnson, Anselmo, Murdoch, Burke, Piper & Hochman, P.A.- Attorneys for Appellee

8.      Michael A. Pizzi, P.A. - Attorneys for Appellant

9.      Moore, K. Micheal - United States District Court Judge

10.     Norris-Weeks, Burnadette - Attorney for Appellee

11.     Pizzi, Michael A. - Attorney for Appellant

12.     Railey, Jonathan H. - Attorney for Appellee

13.     Stearns, Christopher J.- Attorney for Appellee

## **STATEMENT REGARDING ORAL ARGUMENT**

While this Answer Brief concisely and comprehensively addresses the salient issues before this Court, Appellee, City of Opa-Locka, welcomes oral argument to the extent this Court deems same advisable or necessary.

# **TABLE OF CONTENTS**

Certificate of Interested Persons and Corporate Disclosure Statement ......................i

Statement Regarding Oral Argument ..................................................................... ii

Table of Contents ................................................................................................ iii

Table of Citations ...............................................................................................vi

Introduction ...................................................................................................... xii

Statement of Jurisdiction.................................................................................. xiii

Statement of the Issue ..........................................................................................1

Statement of the Case...........................................................................................2

    A. Nature of the Case ......................................................................................2

    B.  Statement of the Facts..................................................................................2

    C.  Course of Proceedings and Disposition Below ...........................................7

    D.  Standard of Review......................................................................................9

Summary of the Argument..................................................................................10

Argument............................................................................................................11

**I.      THE DISTRICT COURT CORRECTLY ENTERED SUMMARY
JUDGMENT IN THE CITY'S FAVOR ....…………………………11**

    **A. The district court properly entered judgment in the City's favor on
Gallimore's age discrimination claim …………………………...11**

        **1.    Gallimore was not "terminated" in May 2021...........12**

        **2.    Gallimore failed to establish a valid comparator ......16**

3.      No but-for causation ....................................................20

4.      The City's legitimate nondiscriminatory reasons......23

5.      Gallimore failed to establish that the City's
        articulated reasons are all pretextual .........................27

B. The district court properly entered judgment in the City's favor
   on Gallimore's gender discrimination claim ..................................30

1.      Gallimore cannot establish a *prima facie* gender
        discrimination claim regarding her October 2020
        demotion ....................................................................30

2.      Gallimore cannot establish a *prima facie* gender
        discrimination claim regarding any claimed May 2021
        termination .................................................................32

3.      Plaintiff failed to establish that the City's articulated
        reasons for Plaintiff's demotion (and claimed
        termination) are pretextual .........................................34

C. The district court properly entered judgment in the City's favor
   on Gallimore's Title VII retaliation claim .......................................34

1.      Gallimore did not incur adverse employment action in
        May 2021.....................................................................35

2.      Gallimore failed to establish the requisite causal
        connection between protected activity and claimed
        adverse employment action .........................................36

3.      Gallimore failed to establish that the City's
        articulated reasons regarding her end-of-employment
        are pretextual ..............................................................39

Conclusion ...........................................................................................................41

Certificate of Compliance .................................................................................42

Certificate of Service .........................................................................................43

# TABLE OF CITATIONS

## Cases

*Armstrong v. Flowers Hosp., Inc.,*
33 F.3d 1308 (11th Cir. 1994) ..............................................................16

*Atchison v. Bd. of Regents of Univ. Sys. of Georgia,*
802 F. App'x 495 (11th Cir 2020) ..........................................................9

*Ayala v. Sheriff, Broward Cnty. Fla.,*
594 F. App'x 602 (11th Cir. 2015) .........................................................23

*Blue Cross & Blue Shield v. Weitz,*
913 F.2d 1544 (11th Cir.1990) ..............................................................11

*Burke v. United States Postal Serv.,*
2023 WL 8841352, at *3 (11th Cir. Dec. 21, 2023)................................39

*Burlington Northern v. White,*
548 U.S. 53 (2006)................................................................................13

*Brooks v. County Comm'n of Jefferson County, Ala.,*
446 F.3d 1160 (11th Cir. 2006) .............................................................27

*Brungart v. BellSouth Telecomms. Inc.,*
231 F.3d 791 (11th Cir. 2000) ..............................................................39

*Campbell v. Mayo Clinic Inc.,*
2024 WL 713921, at *2 (11th Cir. Feb. 21, 2024) .................................20

*Chapman v. AI Transp.,*
229 F.3d 1012 (11th Cir. 2000) ...................................................... 27, 28

*Combs v. Plantation Patterns,*
106 F.3d 1519 (11th Cir. 1997) ...................................................... 27, 28

*Cooper v. Georgia Dep't of Transportation,*
837 F. App'x 657 (11th Cir. 2020) .........................................................31

*Cordoba v. Dillard's, Inc.*,
419 F.3d 1169 (11th Cir. 2005) ...............................................................22

*Coutu v. Martin County Bd. of County Comm'rs*,
47 F. 3d 1068 (11th Cir. 1995) ...............................................................35

*Crawford v. Carroll*,
529 F.3d 961 (11th Cir. 2008) ...............................................................14

*Cuddeback v. Fla. Bd. of Educ.*,
381 F.3d 1230 (11th Cir. 2004) ......................................................... 30, 31

*Dagnesses v. Target Media Partners*,
711 F. App'x 927 (11th Cir. 2017) ..................................................... 23, 24

*Davis v. Town of Lake Park*,
245 F.3d 1232 (11th Cir. 2001) ...............................................................13

*Doe v. Dekalb County Sch. Dist.*,
145 F.3d 1441 (11th Cir. 1998) ...............................................................14

*Denney v. City of Albany*,
247 F. 3d 1172 (11th Cir. 2001) ...............................................................29

*East v. Clayton Cnty., GA*,
436 F. App'x 904 (11th Cir. 2011) ...........................................................12

*Edmondson v. Bd. of Trustees of Univ. of Alabama*,
258 F. App'x 250 (11th Cir. 2007) ...........................................................19

*Elrod v. Sears, Roebuck & Co.*,
939 F.2d 1466 (11th Cir. 1991) ...............................................................28

*Fitzpatrick v. City of Atlanta*,
2 F.3d 1112 (11th Cir. 1993) .....................................................................9

*Gross v. FBL Financial Services, Inc.*,
557 U.S. 167 (2009) ................................................................................12

*Gupta v. Fla. Bd. of Regents*,
212 F.3d 571 (11th Cir. 2000) ......................................................... 13, 14

*Harper v. Blockbuster Entm't Corp.,*
139 F.3d 1385 (11th Cir. 1998) ............................................................35

*Hazen Paper Co. v. Biggins*,
507 U.S. 604 (1993)...........................................................................21

*Higdon v. Jackson*,
393 F.3d 1211 (11th Cir. 2004) ............................................................14

*Jones v. Bank of Am., N.A.*,
564 F. App'x 432 (11th Cir. 2014) ............................................. 18, 19, 30

*Jones v. Birmingham, City of,*
2022 WL 4393344, at *3 (11th Cir. Sept. 23, 2022) ................................. 36, 37, 38

*Kidd v. Mando Am. Corp.*,
731 F.3d 1196 (11th Cir. 2013) ................................................. 23, 24

*Lewis v. Blue Bird Corp.*,
835 F. App'x 526 (11th Cir. 2020) ................................................. 28, 29

*Lewis v. City of Union City, Georgia*,
918 F.3d 1213 (11th Cir. 2019) ............................................................16

*Lewis v. Sec'y of U.S. Air Force*,
2022 WL 2377164 (11th Cir. June 30, 2022).........................................16

*Matamoros v. Broward Sheriff's Off.*,
2 F.4th 1329 (11th Cir. 2021) ............................................................37

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973)................................................. 16, 17, 20, 23, 25, 39

*Mealing v. Ga. Dept. of Juvenile Justice,*
564 Fed. Appx 74 (11th Cir. 2014)........................................................36

*Mora v. Jackson Memorial Foundation*, Inc.,
597 F. 3d 1201 (11th Cir. 2010) ............................................................12

*Nix v. WLCY Radio*,
738 F.2d 1181 (11th Cir. 1984) ...............................................................28

*Porterfield v. Soc. Sec. Admin.*,
No. 20-10538, 2021 WL 3856035, at *5 (11th Cir. Aug. 30, 2021) ......................13

*Pennington v. City of Huntsville*,
261 F.3d 1262 (11th Cir. 2001) .............................................................28

*Reeves v. Columbus Consol. Gov't*,
2024 WL 33903, at *2 (11th Cir. Jan. 3, 2024) .........................................20

*Regions Bank v. Legal Outsource PA*,
936 F.3d 1184 (11th Cir. 2019) ...............................................................9

*Resolution Trust Corp. v. Dunmar Corp.*,
43 F.3d 587 (11th Cir. 1995) ...............................................................11

*Sapuppo v. Allstate Floridian Ins. Co.*,
739 F.3d 678 (11th Cir. 2014) ...............................................................31

*Shotz v. City of Plantation*,
344 F.3d 1161, n.30 (11th Cir. 2003) ......................................................36

*Sims v. MVM, Inc.*,
704 F.3d 1327 (11th Cir. 2013) ...............................................................21

*Singh v. U.S. Atty. Gen.*,
561 F.3d 1275 (11th Cir. 2009) ...............................................................19

*Smelter v. S. Home Care Servs. Inc.*,
2018 WL 4560684 (11th Cir. 2018) ......................................................23

*Smith v. City of Fort Pierce, Fla.*,
565 Fed. Appx. 774 (11th Cir. 2014).......................................................36

*Springer v. Convergys Customer Mgmt. Grp. Inc.*,
509 F.3d 1344 (11th Cir. 2007) ...............................................................27

*Stevenson v. City of Sunrise*,
2021 WL 4806722, at *10 (11th Cir. Oct. 15, 2021).....................................37

*Texas Dep't of Cmty. Affairs v. Burdine*,
450 U.S. 248 (1981).................................................................. 24, 27

*Tsavaris v. Savannah Law Sch., LLC*,
847 F. App'x 634 (11th Cir. 2021) ........................................27

*Tucker v. Morris State Bank*,
154 F. App'x 183 (11th Cir. 2005) ........................................19

*Univ. of Texas Sw. Med. Ctr. V. Nassar*,
570 U.S. 338 (2013).................................................................36

*Vista Mktg., LLC v. Burkett*,
812 F.3d 954 (11th Cir. 2016) .................................................9

*Williams-Evans v. Advance Auto Parts*,
843 F. App'x 144 (11th Cir. 2021) ........................................38

*Williams v. Polk Cnty. Bd. of Cnty. Commissioners*,
2024 WL 835242, at *3 (11th Cir. Feb. 28, 2024) ........................ 31, 32

*Young v. United Parcel Serv., Inc*.,
575 U.S. 206 (2015).................................................................17

## Statutes and Rules

28 U.S.C. §1291 .................................................................... xii

29 U.S.C. §623(a)(1).................................................................11

42 U.S.C. §2000e-2(m).............................................................36

42 U.S.C. §2000e-3(a) .............................................................35

Fed. R. App. P. 32(f).................................................................35

Fed. R. App. P. 32(a)(5).............................................................35

Fed. R. App. P. 32(a)(6) .............................................................35

Fed. R. App. P. 32(a)(7)(B)(i)..................................................................35

# INTRODUCTION

In this Answer Brief, Defendant/Appellee, City of Opa-Locka, refers to itself as the "City."

Appellee refers to Plaintiff/Appellant, Sharon Gallimore, as "Gallimore."

Appellee cites to the record on appeal using the district court's docket entry numbers, thusly:

[DE [number] at [page]].

Appellees cite to Gallimore's Initial Brief thusly:

I.B. at [page number].

Gallimore submitted an Appendix to this Court. Gallimore did not submit the City's summary judgment exhibits (i.e., the City's evidence [DE 32-1] to [DE 32-8]) as part of the Appendix. Gallimore solely included her own summary judgment exhibits.

The City therefore has submitted a Supplemental Appendix including the City's summary judgment papers and evidence that Gallimore omitted from her Appendix to ensure that this Court has the complete summary judgment record before it.

## <u>STATEMENT OF JURISDICTION</u>

Gallimore seeks review of the district court's order granting the City's motion for summary judgment. [DE 52].

This Court has jurisdiction pursuant to 28 U.S.C. §1291.

## STATEMENT OF THE ISSUE

I.   Whether the district court properly entered judgment in the City's favor on Gallimore's gender and age discrimination and retaliation claims.

## STATEMENT OF THE CASE

**A.**     **Nature of the Case**

Gallimore is a former City police officer. Gallimore sued the City claiming that the City intentionally discriminated against her on the basis of her age and gender and further retaliated against her in purported violation of the Age Discrimination in Employment Act ("ADEA") and Title VII of the Civil Rights Act of 1964 ("Title VII").

**B.**     **Statement of the Facts**

Gallimore is a fifty-one (51) year old, female former City police officer. [DE 32] at pg. 1, ¶¶ 1-2. In early 2020, the City engaged the Miami-Dade Police Department ("MDPD") to conduct an organizational assessment ("Assessment") of the City's police department. *Id.* at pg. 1, ¶ 3. Gallimore was the City's Assistant Chief of Police during the relevant time period the MDPD conducted the Assessment. *Id.* at pg. 2, ¶ 9.

The Assistant Chief of Police position is the second highest ranking position in the City's police department. *Id.* at pg. 3, ¶ 11. Only the Chief of Police position is a higher ranking position in the City's police department. *Id.* James Dobson ("Dobson") was the City's Chief of Police during the relevant time period the MDPD performed the Assessment. *Id.* at pg. 3, ¶ 10. Both the Chief of Police and Assistant Chief of Police positions are leadership, supervisory, and administrative positions.

*Id.* at pg. 3, ¶ 11.

As part of the Assessment, the MDPD interviewed former City Manager John Pate ("Pate") and various department employees, and also reviewed department policies, budgets, and practices. *Id.* at pg. 1, ¶ 4. The MDPD identified numerous deficiencies within the City's police department and authored a series of detailed findings, conclusions, and recommendations as part of a written report. *Id.* at pg. 2, ¶ 5.

The Assessment found, in relevant part, that "a majority of the feedback suggested that the [City's police] department [was] beset by a lack of effective communications between supervisors and employees, a lack of adherence to rules, policies, and job descriptions, an overabundance of supervisors as compared to rank-and-file employees, inconsistent or non-existent accountability, unacceptable levels of sick leave use, and a scarcity of strategy and planning in guiding the department's day-to-day operations." *Id.* at pg. 2, ¶ 6. The Assessment further explained how City police department employees were asked to apply a numerical value to the current morale level of the City's police department, with "1" representing "terrible" and "5" representing "outstanding." *Id.* at pg. 2, ¶ 7. Department employees provided an average rating of "1." *Id.*

The Assessment concluded, in relevant part, that "significant changes [were] needed in practically all aspects of the department's administrative and operational

functions" and that "some of the deficiencies detailed in the report result[ed] from a lack of leadership throughout the supervisory ranks." *Id.* at pg. 2, ¶ 8.

Under Section 3.3 of the City's Code of Ordinances, Pate (as City Manager), possessed the sole decision-making authority regarding personnel decisions relating to Dobson and Gallimore in their roles as Chief of Police and Assistant Chief of Police. *Id.* at pg. 3, ¶ 12. Pate terminated Dobson's employment in August 2020, in relevant part, based on the findings contained within the MDPD's Assessment. *Id.* at pg. 3, ¶ 13. Dobson was 49-years old at the time of his termination. *Id.* at pg. 3, ¶ 14. Following his August 2020 termination from the City, Dobson was never consulted regarding, or otherwise made privy to, any City personnel decision, including the relevant decisions made regarding Gallimore's employment in October 2020 and May 2021 that are the subject of this case. [DE 47] at pgs. 1-2, ¶¶ 1-7.

Pate demoted Gallimore from Assistant Chief of Police to road patrol officer effective October 6, 2020. [DE 32] at pgs. 3-4, ¶ 15. Gallimore was 49-years old at the time of her demotion and was specifically advised by Pate that he was demoting her from Assistant Chief of Police because of findings made within the MDPD's Assessment. *Id.* at pg. 4, ¶¶ 16-17. The City, via Pate, appointed Nikeya Jenkins ("Jenkins"), a female, to fill the Assistant Chief of Police vacancy in October 2020. *Id.* at pg. 4, ¶ 20.

Outside of pure conjecture, Gallimore conceded that she has no evidence that Pate demoted her because of her age or gender and further testified that she has no evidence that Pate appointed Jenkins to the Assistant Chief of Police position because Jenkins was younger than Gallimore. *Id.* at pg. 4, ¶¶ 18, 21. Sole and final decision-maker Pate likewise explicitly testified that he has never discriminated against Gallimore on the basis of her age or gender. *Id.* at pg. 4, ¶ 22.

Gallimore filed an EEOC Charge of Discrimination ("Charge") in March 2021. *Id.* at pg. 5, ¶ 26. Gallimore testified that she never discussed the Charge with anyone at the City and that she never otherwise heard anyone at the City discuss the Charge. *Id.* at pg. 5, ¶ 27. The record is otherwise devoid of any evidence that the City's sole and final decision-maker, Pate, knew of the Charge or that Pate (or anyone else at the City) took any claimed adverse employment action against Gallimore because Gallimore filed the Charge.

The City's Administrative Regulation 1-114, titled "Absenteeism and Tardiness," defines an unexcused absence, in part, as: "An employee does not report to work and does not properly call in to report the absence." *Id.* at pg. 6, ¶ 33. Pursuant to the City's Administrative Regulation 1-114, three consecutive unexcused absences is considered job abandonment and a voluntary resignation. *Id.* at pg. 6, ¶ 34.

On Thursday, May 6, 2021, Gallimore left work at 11:30 a.m. and advised that she was not feeling well. *Id.* at pg. 6, ¶ 35. On Friday, May 7, 2021, Gallimore called in sick and did not report to work. *Id.* at pg. 6, ¶ 36. On Monday, May 10, 2021, Gallimore called in sick and did not report to work. *Id.* at pg. 6, ¶ 37. On Tuesday, May 11, 2021, Gallimore was sent home from work because she failed to provide a doctor's note to substantiate her absences from earlier in the week. *Id.* at pg. 7, ¶ 38.

On Wednesday, May 12, 2021, Thursday, May 13, 2021, and Friday, May 14, 2021, Gallimore did not call out or report to work. *Id.* at pg. 7, ¶ 39. Given these consecutive unaccounted absences, the City ordered a wellness check and found that Gallimore was home. *Id.* at pg. 7, ¶¶ 40-41. Gallimore admitted in her deposition that there were "several days" that she failed to report to work in May 2021. *Id.* at pg. 7, ¶ 40.

On May 17, 2021, the City sent Gallimore correspondence outlining Gallimore's consecutive unexcused absences and the City's acceptance of Gallimore's voluntary resignation under Administrative Regulation 1-114. *Id.* at pg. 7, ¶ 42. Gallimore never received a termination letter because the City never terminated her employment. *Id.* at pg. 7, ¶¶ 43-44. Rather, as a result of Gallimore's consecutive unexcused absences, Gallimore was deemed to have abandoned her job and voluntarily resigned from the City pursuant to the City's Administrative

Regulation 1-114. *Id.* at pgs. 7-8, ¶ 44.

Outside of her allegations within her lawsuit and her speculative beliefs, Gallimore has no evidence that her employment with the City was separated in May 2021 because of her age, gender, or submission of the Charge to the EEOC. *Id.* at pg. 5, ¶ 28. Sole and final decision-maker Pate likewise explicitly testified that he never retaliated against Gallimore in any manner. *Id.* at pg. 6, ¶ 32.

**C.    Course of Proceedings and Disposition Below**

On August 9, 2022, Gallimore filed a three-count complaint in the United States District Court for the Southern District of Florida alleging that the City discriminated against her on the basis of her age and gender in violation of the ADEA and Title VII and further retaliated against her in violation of Title VII. [DE 1]. On December 8, 2022, the City filed a motion to dismiss Gallimore's complaint. [DE 20].

Rather than respond to the City's motion to dismiss, Gallimore filed an Amended Complaint on January 2, 2023. [DE 23]. Count I of the Amended Complaint asserted Title VII retaliation. *Id.* at pg. 5. In Counts II and III, Gallimore sued the City for purported age and gender discrimination in violation of the ADEA and Title VII. *Id.* at pgs. 5-6. The Amended Complaint asserted a newly-added Count IV Title VII race discrimination claim against the City. *Id.* at pg. 7. The City filed its answer and defenses to the Amended Complaint on January 17, 2023. [DE 25].

On April 14, 2023, the City filed its motion for summary judgment on Counts I-III of the Amended Complaint. [DE 31].[1] Gallimore filed a response to the City's motion for summary judgment on May 12, 2023. [DE 41]. The City filed its reply in support of motion for summary judgment on May 19, 2023. [DE 45].

On May 22, 2023, the City filed a supplemental statement of undisputed material facts in support of its motion for summary judgment. [DE 47].[2] Gallimore filed a supplemental response to the City's supplemental statement of undisputed material facts on May 25, 2023. [DE 49].

---

[1] Gallimore abandoned the Count IV race discrimination claim when she testified during her March 30, 2023, deposition that the City never discriminated against her on the basis of her race and withdrew the claim accordingly. [DE 31] at pg. 1, fn. 2; [DE 32] at pg. 5, ¶ 23. The race discrimination claim was therefore not at issue on summary judgment and is not otherwise part of this appeal. [DE 52] at pg. 3, fn. 2.

[2] The City's supplemental statement of facts, [DE 47] and [DE 47-1], solely contained undisputed facts elicited from Dobson's deposition, which did not occur until after the filing of the City's motion for summary judgment and was the subject of a hearing that occurred on May 16, 2023, on the City's motion to strike Dobson and Pate as non-party witnesses premised on Gallimore's counsel's failure to produce these witnesses for deposition (and the witnesses' failure to appear at previously-noticed depositions) despite the City's documented repeated efforts. See, e.g., [DE 29], generally; [DE 40]; [DE 43]; [DE 46]. The City was permitted to supplement its summary judgment facts after Dobson's May 18, 2023, deposition. [DE 46] at pg. 2, fn. 1. Gallimore, Pate (who Gallimore claims took adverse action against her), and Dobson (who was terminated by Pate) are all represented by the same attorney. Gallimore, Pate, and Dobson all have pending lawsuits against the City. Additional factual background on these issues is set forth in greater detail within [DE 29], which has been submitted as part of the City's Supplemental Appendix.

On June 16, 2023, the district court entered an order granting the City's motion for summary judgment. [DE 52].

This appeal followed. [DE 55]; [DE 56].

**D.** **Standard of Review**

This Court reviews a grant of summary judgment *de novo*. *Regions Bank v. Legal Outsource PA*, 936 F.3d 1184, 1189 (11th Cir. 2019). This Court may affirm a judgment if there exists any adequate ground for doing so, regardless of whether it is the one on which the district court relied. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1117 (11th Cir. 1993); *Vista Mktg., LLC v. Burkett*, 812 F.3d 954, 980 (11th Cir. 2016) ("We may affirm for any reason supported by the record, regardless of whether the district court relied on it."); *Atchison v. Bd. of Regents of Univ. Sys. of Georgia*, 802 F. App'x 495, 509 (11th Cir. 2020) ("We need not determine the proper standard, because Atchison's claims fail under any potentially feasible standard; we conclude that both of his remaining claims fail as a matter of law for lack of any factual support. Accordingly, we affirm the district court's decision, but for a different reason than it elucidated.").

## SUMMARY OF THE ARGUMENT

The district court properly entered judgment in the City's favor on all claims. Gallimore failed to establish *prima facie* cases of age and gender discrimination and retaliation regarding her October 2020 demotion and May 2021 separation from the City. Gallimore further failed to establish that the City's legitimate reasons for taking purported adverse employment action(s) against her were false and that unlawful discrimination and/or retaliation was the real reason.

This Court should affirm.

## I. THE DISTRICT COURT CORRECTLY ENTERED SUMMARY JUDGMENT IN THE CITY'S FAVOR

### A. The district court properly entered judgment in the City's favor on Gallimore's age discrimination claim

The ADEA makes it "unlawful for an employer to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).

In cases where direct evidence of age discrimination is absent (like here), a plaintiff establishes a circumstantial, *prima facie* case of age discrimination by showing (1) she was a member of a protected class; (2) she was subjected to an

---

[3] The Initial Brief is muddled, unnecessarily verbose, and replete with irrelevant rhetoric and posturing. I.B., generally. It comingles claims and consistently makes references to race despite Gallimore's abandonment of her race discrimination claim almost one year ago. The brief does not delineate any specific challenges to the district court's specific holdings and findings. It speaks in generalities. Numerous "arguments" are asserted without factual foundation, legal authority, or citations to the record. Many assertions raised in the "summary of the argument" section are not even mentioned in the actual "argument" section of the brief. It was not the district court's obligation nor is it now this Court's (or the City's) obligation to scour the record to decipher what Gallimore is attempting to articulate. See, e.g., *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (noting that when parties do not fully develop their arguments and support them with citation to legal authority, the burden upon the Court is improperly increased. Thus, "the onus is upon the parties to formulate arguments."); see also *Blue Cross & Blue Shield v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990) (there is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment). The City does its best to succinctly respond and present the salient issues for this Court's consideration in a concise manner.

adverse employment action; (3) she was treated less favorably than a younger, similarly situated employee; and (4) she was qualified to do the job. See *East v. Clayton Cnty., GA*, 436 F. App'x 904, 911 (11th Cir. 2011).

An ADEA claim requires a plaintiff to prove that her age was the "but for" reason for the adverse employment action. See *Gross v. FBL Financial Services, In*c., 557 U.S. 167, 177 (2009) (finding that the ADEA does not authorize a mixed-motive age discrimination claim); see also *Mora v. Jackson Memorial Foundation*, Inc., 597 F. 3d 1201, 1204 (11th Cir. 2010) (holding that an ADEA plaintiff must establish "but for" causation and that the employer either acted because of the plaintiff's age or it did not).

The district court correctly found that Gallimore failed to establish a *prima facie* case of age discrimination under the ADEA. [DE 52] at pgs. 7-9. The district court likewise properly determined that Gallimore failed to establish that the City's stated reasons for Gallimore's purported adverse employment action(s) were pretextual. *Id.* at pg. 10.

### 1. Gallimore was not "terminated" in May 2021

As an initial matter, Gallimore cannot establish a *prima facie* case of discrimination regarding her May 2021 departure from the City because Gallimore was never terminated.[4] Establishing an adverse employment action requires the

---

[4] While the district court did not specifically analyze whether Gallimore's May 2021

employee to "show a serious and material change in the terms, conditions, or privileges of employment . . . as viewed by a reasonable person in the circumstances." *Porterfield v. Soc. Sec. Admin.*, No. 20-10538, 2021 WL 3856035, at *5 (11th Cir. Aug. 30, 2021) (quoting *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001), overruled on other grounds by *Burlington Northern v. White*, 548 U.S. 53 (2006)). And the adverse effect on Plaintiff's employment must be tangible—a speculative impact on the Plaintiff's employment will not suffice. *Porterfield*, 2021 WL 3856035, at *5.

The employee's subjective view of the significance and adversity of the employer's action is not controlling; rather, the employment action must be materially adverse as viewed by a reasonable person in the circumstances. *Davis,* 245 F.3d at 1239-40; see also *Gupta v. Fla. Bd. of Regents*, 212 F.3d 571, 587 (11th Cir. 2000) ("An adverse employment action is an ultimate employment decision, such as discharge or failure to hire, or other conduct that alters the employee's compensation, terms, conditions, or privileges of employment, deprives him or her

---

departure from the City constituted an adverse employment action, see e.g., [DE 52] at pg. 5, pg. 10, fn. 5, the City submits that Gallimore's failure to establish an adverse employment action in connection with her May 2021 end-of-employment constitutes additional grounds for affirmance of summary judgment in the City's favor, as this Court may affirm for any reason supported by the record. The following argument that Gallimore never incurred any adverse employment action relating to her May 2021 separation from the City applies equally to both of Gallimore's discrimination claims and her retaliation claim.

of employment opportunities, or adversely affects his or her status as an employee")
(cleaned up); *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008) (same);
*Higdon v. Jackson*, 393 F.3d 1211, 1219 (11th Cir. 2004) ("An employment
action...is not adverse merely because the employee dislikes or disagrees with it and
not everything that makes an employee unhappy is actionable adverse action.")
(cleaned up); *Doe v. Dekalb County Sch. Dist.*, 145 F.3d 1441, 1449 (11th Cir.1998)
(same).

Here, on Thursday, May 6, 2021, Gallimore left work at 11:30 a.m. and
advised that she was not feeling well. [DE 32] at pg. 6, ¶ 35. On Friday, May 7,
2021, Gallimore called in sick and did not report to work. *Id.* at pg. 6, ¶ 36. On
Monday, May 10, 2021, Gallimore called in sick and did not report to work. *Id.* at
pg. 6, ¶ 37. On Tuesday, May 11, 2021, Gallimore was sent home from work because
she failed to provide a doctor's note to substantiate her absences from earlier in the
week. *Id.* at pg. 7, ¶ 38.

On Wednesday, May 12, 2021, Thursday, May 13, 2021, and Friday, May 14,
2021, Gallimore did not call out or report to work. *Id.* at pg. 7, ¶ 39. Given these
unaccounted absences, the City ordered a wellness check and found that Gallimore
was home. *Id.* at pg. 7, ¶¶ 40-41. Gallimore conceded in her deposition that there
were "several days" that she failed to report to work in May 2021. *Id.* at pg. 7, ¶ 40.

On May 17, 2021, the City sent Gallimore correspondence outlining Gallimore's consecutive unexcused absences and the City's acceptance of Gallimore's voluntary resignation under Administrative Regulation 1-114. *Id.* at pg. 7, ¶ 42. Gallimore never received a termination letter because the City never terminated her employment. *Id.* at pg. 7, ¶¶ 43-44. Rather, as a result of Gallimore's consecutive unexcused absences, Gallimore was deemed to have abandoned her job and voluntarily resigned from the City pursuant to the City's Administrative Regulation 1-114. *Id.* at pgs. 7-8, ¶ 44.

Gallimore's response to the City's motion for summary judgment did not substantively address this threshold and dispositive issue. [DE 41], generally. Gallimore simply asserted that she was "fired for bogus made up reasons." *Id.* at pg. 6; see also [DE 52] at pg. 10. The Initial Brief similarly does not substantively address Gallimore's job abandonment, the City's attendance policy, or Gallimore's admitted absences in May 2021. I.B., generally. The City's arguments on this abandonment issue remain unrebutted.

The City was and remains entitled to judgment on Gallimore's age discrimination claim (and all other claims) premised on Gallimore's May 2021 separation from the City.

## 2. Gallimore failed to establish a valid comparator[5]

The district court properly found that Gallimore failed to identify a valid comparator and therefore could not establish a *prima facie* case of age discrimination. [DE 52] at pgs. 8-9.

Disparate treatment claims require evidence of **intentional** discrimination. *Armstrong v. Flowers Hosp., Inc.,* 33 F.3d 1308, 1313 (11th Cir. 1994) ("A plaintiff alleging a claim of disparate treatment must establish that the employer intended to discriminate **against the protected group**. If direct evidence of discriminatory intent is not available, a plaintiff may present circumstantial evidence from which an inference of intentional discrimination may be drawn.") (emphasis added).

A meaningful comparator analysis must be conducted at the *prima facie* stage of the *McDonnell Douglas*[6] burden-shifting framework, as opposed to the pretext phase. *Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1219, 1224 (11th Cir. 2019) (In order to defeat summary judgment, a plaintiff proceeding under *McDonnell Douglas* must prove, as a preliminary matter, not only that she is a member of a protected class, that she suffered an adverse employment action, and

---

[5] The comparator analysis applies to all discrimination claims asserted by Gallimore here. See, e.g., *Lewis v. Sec'y of U.S. Air Force*, 2022 WL 2377164, at *11 (11th Cir. June 30, 2022) (jointly analyzing comparators for ADEA age and Title VII discrimination claims and affirming summary judgment in defendant's favor).

[6] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

that she was qualified for the job in question, **but also that she was treated less favorably than "similarly situated" individuals outside her class**). A plaintiff must show that she and her comparators are "similarly situated in all material respects." *Id.*

Valid comparators will have (1) engaged in the same basic misconduct; (2) been subjected to the same employment policy, guideline or rule as the plaintiff; (3) typically worked under the same jurisdiction of the same supervisor as the plaintiff; and (4) shared the plaintiff's employment or disciplinary history. *Id.* at 1227-1228. A plaintiff and her comparators "… in an objective sense…cannot reasonably be distinguished." *Id.* citing to *Young v. United Parcel Serv., Inc*., 575 U.S. 206, 209, (2015).

As the City's Assistant Chief of Police, Gallimore held the second highest ranking position in the City's police department. [DE 32] at pgs. 2-3, ¶¶ 9, 11. Only the Chief of Police position is a higher-ranking position in the City's police department. *Id.* at pg. 3, ¶ 11. The Assistant Chief of Police position is a leadership, supervisory, and administrative position. *Id.* As is the Chief of Police position. *Id.*

Here, the record is devoid of any similarly situated comparator who was treated more favorably than Gallimore, i.e., a younger City police officer in a leadership, supervisory, or administrative role who was not demoted by Pate as Gallimore was or otherwise incurred any adverse employment action in or around

October 2020. Likewise, to the extent Gallimore's May 2021 separation was deemed adverse employment action (it is not), the record is devoid of any City police officer who incurred consecutive unexcused absences like Gallimore did but was treated more favorably than Gallimore.

Gallimore failed to identify a single comparator below in response to the City's motion for summary judgment. [DE 41], generally. Indeed, Gallimore completely *ignored* the City's central arguments regarding her failure to establish the existence of a valid comparator. *Id.* at pgs. 5-6.[7] The trial court correctly recognized Gallimore's omission. [DE 52] at pg. 9 ("Plaintiff has not identified any similarly situated comparators… Plaintiff offers no rebuttal in response…").[8]

By failing to respond to the City's summary judgment arguments below, Gallimore abandoned her discrimination claims against the City. See *Jones v. Bank of Am., N.A.*, 564 F. App'x 432, 434 (11th Cir. 2014) (confirming the defendant's

---

[7] Gallimore's response to the City's motion for summary judgment [DE 41] totaled 7 pages. The response contained minimal record citations and scant legal analysis regarding all claims that the City moved for summary judgment on. *Id.* The Initial Brief is similarly structured.

[8] Regarding Gallimore's October 2020 demotion following the MDPD's Assessment, the only conceivable comparator Gallimore could have offered (but did not offer) was Dobson. But Dobson was terminated by Pate and was the same age as Gallimore at the time of his August 2020 termination. [DE 32] at pgs. 3-4, ¶¶ 13-17. Under no analysis was Dobson treated better than Gallimore. Moreover, regarding her end of employment in May 2021 (even assuming Gallimore's job abandonment constituted actionable adverse employment action), the record is devoid of any evidence of any other City police officer (in *any* role, let alone a supervisory role) who had consecutive unexecuted absences like Gallimore did in May 2021 as defined by the City's Administrative Regulation 1-114.

entitlement to summary judgment where the plaintiffs failed to respond to certain arguments and explaining that "when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned"); *Edmondson v. Bd. of Trustees of Univ. of Alabama*, 258 F. App'x 250, 253 (11th Cir. 2007) (finding plaintiff abandoned her Equal Pay Act claim against defendant because she failed to respond to the defendant's summary judgment arguments on that claim and explaining how "grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned"); see also *Tucker v. Morris State Bank*, 154 F. App'x 183, 186 (11th Cir. 2005) (affirming lower court's conclusion that non-movant failed to carry his summary judgment burden when his response to summary judgment was devoid of citations to specific evidence); *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009) ("… simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue…").

Like she failed to do below, Gallimore failed to advance any substantive argument here on appeal regarding the comparator issue. I.B. at pgs. 20-23. Gallimore merely regurgitates (minimal) case law and advances "bullet points" of irrelevant, incomplete, and otherwise uncited assertions from declarations authored by herself and Dobson. *Id.* No actual legal or factual analysis is proffered whatsoever regarding the age discrimination claim or the dispositive comparator issue. *Id.*

As Gallimore failed to otherwise adduce any evidence that any City police officer in a leadership, supervisory, and administrative position was treated more favorably than her at any point during her employment with the City, Gallimore cannot maintain a *prima facie* case of age discrimination. See, e.g., *Campbell v. Mayo Clinic Inc.*, 2024 WL 713921, at *2 (11th Cir. Feb. 21, 2024) (affirming summary judgment in the defendant employer's favor because the plaintiff failed to "identify comparators who were similarly situated in all material respects" and therefore could not establish a *prima facie* case of discrimination); *Reeves v. Columbus Consol. Gov't*, 2024 WL 33903, at *2 (11th Cir. Jan. 3, 2024) (finding the *McDonell Douglas* analysis "ends there" after the plaintiff failed to establish that she was treated differently than purported similarly situated employees).

This Court should affirm.

### 3. No but-for causation

Gallimore further failed to establish a *prima facie* case of age discrimination because the record is devoid of evidence to establish that Plaintiff's age was the but-for cause of her October 2020 demotion.[9] A "but-for" cause requires a closer link

---

[9] Gallimore's response to the City's summary judgment motion below and the Initial Brief do not even remotely attempt to assert that Gallimore was separated in May 2021 because of her age. [DE 41], generally; I.B., generally. The City advances this argument for completeness sake. Briefly, the record is devoid of any evidence that Gallimore's end-of-employment in May 2021 had *anything* to do with Gallimore's age. Thus, to the extent Gallimore's May 2021 separation from the City constitutes an actionable adverse employment action (it does not), there is <u>nothing</u> in the evidentiary record to establish that

than mere proximate causation; it requires that the proscribed animus have a **determinative influence on the employer's adverse decision**. See, e.g., *Sims v. MVM, Inc.*, 704 F.3d 1327, 1335–36 (11th Cir. 2013); *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993) (explaining that the claim "cannot succeed unless the employee's protected trait actually played a role in [the employer's decisionmaking] process and had a **determinative influence on the outcome**") (emphasis added).

Here, in early 2020, the City engaged the MDPD to conduct an organizational assessment of the City's police department. [DE 32] at pg. 1, ¶ 3. Gallimore was the City's Assistant Chief of Police at this time. *Id.* at pg. 2, ¶ 9. The MDPD interviewed Pate and various department employees, and also reviewed department policies, budgets, and practices. *Id.* at pg. 1, ¶ 4. The MDPD identified numerous deficiencies within the City's police department and authored a series of detailed findings, conclusions, and recommendations as part of a written report. *Id.* at pg. 2, ¶ 5.[10]

The Assessment concluded, in relevant part, that "significant changes [were] needed in practically all aspects of the department's administrative and operational functions" and that "some of the deficiencies detailed in the report result[ed] from a lack of leadership throughout the supervisory ranks." *Id.* at pg. 2, ¶ 8.

---

Gallimore's age was the "but-for" cause of the circumstances surrounding her departure from the City in May 2021.

[10] The Assessment's detailed findings are further summarized below.

In response to the MDPD's Assessment, Pate took personnel actions with respect to the supervisory and leadership positions held within the City's police department. Pate terminated Dobson in August 2020 following the Assessment's findings. *Id.* at pg. 3, ¶¶ 10, 13. Pate then demoted Gallimore from Assistant Chief of Police as a result of the Assessment's findings. *Id.* at pg. 4, ¶ 17. Gallimore explicitly recognized as much, and testified that outside of pure conjecture, she has no evidence that Pate demoted her because of her age (or gender). *Id.* at pg. 4, ¶¶ 16-18, 21. Sole and final decision-maker Pate likewise explicitly testified that he has never discriminated against Gallimore on the basis of her age (or gender). *Id.* at pg. 4, ¶ 22.

Gallimore's speculation is insufficient to defeat the City's entitlement to summary judgment. See, e.g., *Cordoba v. Dillard's, Inc*., 419 F.3d 1169, 1181 (11th Cir. 2005) (speculation cannot create a genuine issue of material fact sufficient to defeat a well-supported motion for summary judgment). In the absence of record evidence establishing that Gallimore's age was the "but for" cause of her October 2020 demotion (or any other claimed adverse employment action), Gallimore cannot establish a *prima facie* claim of age discrimination. The City was and remains entitled to judgment on the age discrimination claim.

### 4. The City's legitimate nondiscriminatory reasons[11]

The district court also properly determined that Gallimore failed to establish that the City's multiple legitimate nondiscriminatory reasons for Gallimore's demotion and circumstances surrounding Gallimore's May 2021 departure from the City are pretextual. [DE 52] at pg. 10.

Discrimination claims based on circumstantial evidence are analyzed using the *McDonnell Douglas* burden shifting framework. See, e.g., *Kidd v. Mando Am. Corp.*, 731 F.3d 1196, 1202 (11th Cir. 2013) (citation omitted); *Smelter v. S. Home Care Servs. Inc.*, 2018 WL 4560684 (11th Cir. 2018); *Ayala v. Sheriff, Broward Cnty. Fla.*, 594 F. App'x 602, 603 (11th Cir. 2015) (applying the *McDonnell Douglas* framework to plaintiff's discrimination claim asserted under the ADEA).

"Once the plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the employer ... to introduce evidence of some legitimate, nondiscriminatory reason for its employment decision." *Dagnesses v. Target Media Partners*, 711 F. App'x 927, 931 (11th Cir. 2017), quoting *Kidd*, 731 F.3d at 1202 (internal quotation marks omitted).

"Should the employer make such a showing, the plaintiff must then show that the seemingly legitimate reason the employer gave was pretextual, i.e., the proffered

---

[11] Assuming *arguendo* that Gallimore established a *prima facie* case of discrimination (she did not) and asserted without waiving the threshold arguments above.

reason was not the true reason for the employment decision." *Id*. (quotations and citation omitted). "But the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff **remains at all times with the plaintiff**." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981) (emphasis added).

Here, as part of the Assessment, the MDPD interviewed Pate and various department employees, and also reviewed department policies, budgets, and practices. [DE 32] at pg. 1, ¶ 4. The MDPD identified numerous deficiencies within the City's police department and authored a series of detailed findings, conclusions, and recommendations as part of a written report. *Id.* at pg. 2, ¶ 5.

The Assessment found, in relevant part, that "a majority of the feedback suggested that the [City's police] department [was] beset by a lack of effective communications between supervisors and employees, a lack of adherence to rules, policies, and job descriptions, an overabundance of supervisors as compared to rank-and-file employees, inconsistent or non-existent accountability, unacceptable levels of sick leave use, and a scarcity of strategy and planning in guiding the department's day-to-day operations." *Id.* at pg. 2, ¶ 6. The Assessment further explained how City police department employees were asked to apply a numerical value to the current morale level of the City's police department, with "1" representing "terrible" and "5" representing "outstanding." *Id.* at pg. 2, ¶ 7. Department employees provided an

average rating of "1." *Id.*

The Assessment concluded, in relevant part, that "significant changes [were] needed in practically all aspects of the department's administrative and operational functions" and that "some of the deficiencies detailed in the report result[ed] from a lack of leadership throughout the supervisory ranks." *Id.* at pg. 2, ¶ 8.

Pate, in his role as City Manager and in response to the Assessment, terminated Dobson (the City's Chief of Police) and demoted Gallimore (the City's Assistant Chief of Police). *Id.* at pgs. 3-4, ¶¶ 12-13, 15. Gallimore explicitly admitted that Pate advised her he was demoting her because of the findings made as part of the MDPD's Assessment. *Id.* at pg. 4, ¶¶ 16-17. Indeed, outside of pure conjecture, Gallimore conceded that she has no evidence that Pate demoted her because of her age or gender and testified that she has no evidence that Pate appointed Jenkins to the Assistant Chief of Police position because Jenkins was younger than Gallimore. *Id.* at pg. 4, ¶¶ 18, 21. Pate otherwise testified that he has never discriminated against Gallimore on the basis of her age (or gender). *Id.* at pg. 4, ¶ 22.[12]

---

[12] The Initial Brief's haphazard and hyperbolic claim that the district court ignored "direct evidence" of discrimination is belied by Gallimore's and final decision-maker Pate's own testimony. See, e.g., I.B. at pgs. 11-12. The district court properly applied *McDonnell Douglas.* There is no direct (or circumstantial) evidence of any wrongdoing on the City's part.

The City likewise possesses legitimate nondiscriminatory reasons regarding the circumstances surrounding Gallimore's end-of-employment in May 2021.[13] On Thursday, May 6, 2021, Gallimore left work at 11:30 a.m. and advised that she was not feeling well. [DE 32] at pg. 6, ¶ 35. On Friday, May 7, 2021, Gallimore called in sick and did not report to work. *Id.* at pg. 6, ¶ 36. On Monday, May 10, 2021, Gallimore called in sick and did not report to work. *Id.* at pg. 6, ¶ 37. On Tuesday, May 11, 2021, Gallimore was sent home from work because she failed to provide a doctor's note to substantiate her absences from earlier in the week. *Id.* at pg. 7, ¶ 38.

On Wednesday, May 12, 2021, Thursday, May 13, 2021, and Friday, May 14, 2021, Gallimore did not call out or report to work. *Id.* at pg. 7, ¶ 39. Given these unaccounted absences, the City ordered a wellness check and found that Gallimore was home. *Id.* at pg. 7, ¶¶ 40-41.

On May 17, 2021, the City sent Gallimore correspondence outlining Gallimore's consecutive unexcused absences and the City's acceptance of Gallimore's voluntary resignation under Administrative Regulation 1-114. *Id.* at pg. 7, ¶ 42. Gallimore never received a termination letter because the City never terminated her employment. *Id.* at pg. 7, ¶¶ 43-44. Rather, as a result of Gallimore's consecutive unexcused absences, Gallimore was deemed to have abandoned her job and voluntarily resigned from the City pursuant to the City's Administrative

---

[13] Again, to the extent such separation is deemed adverse employment action.

Regulation 1-114. *Id.* at pgs. 7-8, ¶ 44. In the end, Gallimore's absences led to her separation. There is nothing in the evidentiary record to hint (let alone establish) that Gallimore's separation was premised on her age (or any other protected trait or statutorily protected activity).

### 5. Gallimore failed to establish that the City's articulated reasons are all pretextual

To show a reason is pretext for discrimination, Gallimore must show **both** that the City's reasons were false **and** that discrimination was the real reason. *Tsavaris v. Savannah Law Sch.*, *LLC*, 847 F. App'x 634, 642 (11th Cir. 2021); *Brooks v. County Comm'n of Jefferson County, Ala*., 446 F.3d 1160, 1163 (11th Cir. 2006) (same); *Chapman v. AI Transp.,* 229 F.3d 1012, 1037 (11th Cir. 2000) (a plaintiff must produce sufficient evidence for a reasonable factfinder to conclude that **each** of the employer's proffered nondiscriminatory reasons is pretextual); *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981) ("mere conclusory allegations and assertions will not suffice"). Significantly, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff **remains at all times with the plaintiff**." *Id.* at 253 (emphasis added).

To show pretext, Gallimore must confront the City's legitimate reasons for demoting her "**head on and rebut [them]**." *Springer v. Convegys. Customer Mgmt. Grp., Inc.,* 509 F.3d 1344, 1350 (11th Cir. 2007) (emphasis added); *Combs v.*

*Plantation Patterns,* 106 F.3d 1519, 1534–35 (11th Cir. 1997) (employer entitled to judgment as a matter of law when the reasons for the employer's action were unrebutted); *Chapman,* 229 F.3d at 1030 (an employee must meet a reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason). Gallimore must produce sufficient evidence which would allow a reasonable jury to conclude that the City's non-discriminatory reasons are pretextual. *Id.* at 1037.

The City was not required to prove that it made the right decisions when it decided, via Pate, to demote Gallimore from Assistant Chief of Police following the MDPD's Assessment: the decision may be based on good, bad or erroneous reasons, so long as they were not discriminatory reasons. *Nix v. WLCY Radio*, 738 F.2d 1181, 1187 (11th Cir. 1984); see also *Elrod v. Sears, Roebuck & Co*., 939 F.2d 1466, 1470 (11th Cir. 1991) (federal courts "do not sit as a super-personnel department that reexamine an entity's business decision"); *Pennington v. City of Huntsville*, 261 F.3d 1262, 1267 (11th Cir. 2001) (a plaintiff employee may not establish that an employer's proffered reason is pretextual merely by questioning the wisdom of the employer's reason as long as the reason is one that might motivate a reasonable employer); *Lewis v. Blue Bird Corp*., 835 F. App'x 526, 530 (11th Cir. 2020) ("The heart of the pretext inquiry is not whether the employee agrees with the reasons that the employer gives for the [adverse action], but whether the employer really was

motivated by those reasons."); *Denney v. City of Albany*, 247 F.3d 1172, 1186 (11th Cir. 2001) ("Personal qualities…factor heavily into employment decisions concerning supervisory or professional positions. Traits such as common sense, good judgment, originality, ambition, loyalty, and tact often must be assessed primarily in a subjective fashion, yet they are essential to an individual's success in a supervisory or professional position.").

It is abundantly clear that Gallimore simply disagrees with the City's decisions and believes them to be unfair. But disagreement is not refutation. Gallimore wholly failed to confront each the City's proffered legitimate reasons for her October 2020 demotion[14] and May 2021 separation from the City.[15] Indeed, like

---

[14] The Initial Brief references the MDPD's Assessment just *once,* devoid of any record citation, asserting that Gallimore "was explicitly told that the County Department [sic] Assessment would have no impact on her employment." I.B. at pg. 24. That is the extent of Gallimore "addressing" the Assessment. No argument is advanced whatsoever that the Assessment's findings were false or that it was otherwise used as a pretext for unlawful discrimination (or retaliation).

[15] Assuming *arguendo,* again, that the May 2021 separation premised on Gallimore's job abandonment constituted adverse employment action (it does not). Again, Gallimore failed to substantively address her May 2021 absences, the City's Administrative Regulation 1-114, titled "Absenteeism and Tardiness," or the letter Gallimore received from the City advising her that she had abandoned her job under the City's policy both below and again on appeal. [DE 41]; I.B., generally. Gallimore only once generally avers here that the "allegations that she did not show up for work for three days are simply not true." I.B. at pg. 24. No argument or evidence is advanced whatsoever to show that any purported unlawful discrimination (or retaliation) was the real reason for any alleged termination. What's more, the City's reasons for separating Gallimore's employment in May 2021 cannot be false when Gallimore herself explicitly conceded that she was absent for "several days" in May 2021. [DE 32] at pg. 7, ¶ 40.

she failed to do below, Gallimore here "does not even attempt to undergo this [pretext] analysis" on appeal. [DE 52] at pg. 10 (explaining that the extent of Gallimore's argument regarding pretext was Gallimore's catch-all proclamation that she "was fired for bogus made up reasons" and concluding that Gallimore fell "woefully short of demonstrating her demotion and purported termination were pretextual"); I.B. at pgs. 20-23.

In the end, Gallimore completely failed to address, let alone rebut, the City's stated reasons and she has otherwise abandoned any argument that the City's stated reasons for all purported adverse employment action(s) taken against her were pretextual. See, e.g., *Jones,* 564 F. App'x at 434 (11th Cir. 2014) ("when a party fails to respond to an argument or otherwise address a claim, the Court deems such argument or claim abandoned"). The City was and remains entitled to judgment on the age discrimination claim. This Court should affirm.

## B. The district court properly entered judgment in the City's favor on Gallimore's gender discrimination claim

### 1. Gallimore cannot establish a *prima facie* gender discrimination claim regarding her October 2020 demotion

To establish a *prima facie* case of Title VII gender discrimination, Gallimore must establish that she (1) was a member of a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) was replaced by someone outside her protected class. *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1235

(11th Cir. 2004); see also *Cooper v. Georgia Dep't of Transportation*, 837 F. App'x 657, 667 (11th Cir. 2020) (applying *Cuddeback* and finding plaintiff failed to establish a *prima facie* case of discrimination since "[plaintiff's] replacement, Mr. Allison, was a black employee, [plaintiff] could not show that he was replaced by someone outside his protected class.").

Here, it is undisputed that the City, via Pate, appointed Jenkins (a female) to fill the Assistant Chief of Police vacancy following Gallimore's demotion in October 2020. [DE 32] at pg. 4, ¶ 20. As Gallimore's position was filled by someone in the *same* protected class, Gallimore cannot establish a *prima facie* case of gender discrimination premised on her demotion. The district court properly granted summary judgment in the City's favor on this basis. [DE 52] at pg. 11.

Gallimore otherwise failed to challenge, in any manner, the district court's grant of summary judgment on this specific basis, and has therefore abandoned any argument on this issue. See, e.g., *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) (To obtain reversal of a district court judgment (like here) that "is based on multiple, independent grounds, an appellant must convince us that every stated ground for the judgment against him is incorrect."); *Williams v. Polk Cnty. Bd. of Cnty. Commissioners*, 2024 WL 835242, at *3 (11th Cir. Feb. 28, 2024) (an appellant's failure to challenge even one of the grounds on which the district court based its judgment deems the challenge abandoned on appeal "and it follows

that the judgment is due to be affirmed"). This Court should affirm.

### 2. Gallimore cannot establish a *prima facie* gender discrimination claim regarding any claimed May 2021 termination

Gallimore cannot establish a *prima facie* case of gender discrimination regarding her May 2021 separation from the City because she did not incur any adverse employment action when she was deemed to have voluntarily abandoned her job under the City's Administrative Regulation 1-114. See Section I(A)(1), supra. Gallimore does not otherwise substantively argue on appeal (or below) that gender played in role regarding her May 2021 separation from the City. I.B., generally; [DE 41], generally.

That being said, even assuming *arguendo* Gallimore incurred actionable adverse employment action in May 2021 (she did not), the district court properly found that Gallimore failed to establish that the circumstances surrounding her departure from the City had anything to do with Gallimore's gender. [DE 52] at pgs. 11-12. As she "argued" below, Gallimore solely and perplexingly argues here that she "submitted evidence that an abundance of males who were fired and criminally prosecuted and had a record of misconduct, replaced her in senior positions." I.B. at pg. 24; [DE 52] at pg. 12. Gallimore further qualms with the City's "promotion" and "retention" of (non-similarly situated) male while "she was fired for nothing." See, e.g., I.B. at pgs. 13-14, 24.

Those "arguments" are pure red herring and otherwise completely misapply the law. First, Gallimore was replaced by Jenkins after she was demoted in October 2020. [DE 32] at pg. 4, ¶ 20. The district court properly recognized this undisputed and dispositive fact. [DE 52] at pg. 12. Second, even if Gallimore's generalized and factually unsupported contentions that other males (Bosque and Perez) were "promoted" to other positions (that were not Gallimore's position) at unidentified periods of time were true, such purported (unknown and unidentified "promotions") have <u>nothing</u> to do with Gallimore's claim that she was "fired" in May 2021 because of her gender. I.B. at pg. 24. The district court correctly dismissed Gallimore's failed attempts on this basis to establish unlawful gender discrimination. [DE 52] at pg. 12 ("That two male officers were promoted has no bearing on the reason for Plaintiff's [alleged] termination").[16]

Gallimore's hyperbolic assertion that "there be [sic] no more clear cut case of gender discrimination" aside, the record is devoid of any evidence to establish that the City took <u>any</u> claimed adverse employment action on the basis of Gallimore's gender at <u>any</u> point during her employment. I.B. at pg. 24.

---

[16] The Initial Brief's additional references to the City "appointing police chiefs" with alleged histories of "improprieties" and retaining other officers with purported "misconduct records" (while also referring to their races) are wholly misplaced. See, e.g., I.B. at pg. 9. This has never been a failure to promote case. Gallimore was never the City's Chief of Police. None of these inflammatory allegations factor into any pertinent analysis here. Gallimore's "throw everything against the wall and see what sticks" approach is futile and should be disregarded.

### 3. Plaintiff failed to establish that the City's articulated reasons for Plaintiff's demotion (and claimed termination) are pretextual

The City articulated legitimate nondiscriminatory reasons for Gallimore's October 2020 demotion and claimed adverse employment action in May 2021 that Gallimore failed to establish are pretextual. See Section I(A)(4)-(5), *supra*.

Gallimore has wholly failed to establish that the City's articulated reasons for all claimed adverse employment actions were both false and that the City was motivated by an unlawful intent to discriminate on the basis of Plaintiff's gender (or any other protected trait or activity). I.B., generally.

Like her age discrimination claim, Gallimore fails to proffer any substantive pretext analysis regarding her gender discrimination claim. I.B. at pgs. 23-26 (regurgitating cherry-picked bullet points from statements contained within various declarations without any legal or factual analysis whatsoever). Gallimore solely asserts in a conclusory and self-serving manner that the "proffered reasons by the City have been shown to be false." I.B. at pg. 24. Wrong. Gallimore did not "show" anything regarding pretext below and has similarly failed to "show" anything regarding pretext here again on appeal. I.B., generally. This Court should affirm.

### C. The district court properly entered judgment in the City's favor on Gallimore's Title VII retaliation claim

Title VII prohibits retaliation against an employee "because she has opposed any practice made an unlawful employment practice by [Title VII], or because she

has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a).

To establish a *prima facie* claim of retaliation under Title VII, Gallimore must establish that: (1) she engaged in statutorily protected activity; (2) she suffered adverse employment action; and (3) the requisite causal connection between protected activity and adverse action. *Harper v. Blockbuster Entm't Corp.,* 139 F.3d 1385, 1388 (11th Cir. 1998); *Coutu v. Martin County Bd. of County Comm'rs*, 47 F. 3d 1068, 1074 (11th Cir. 1995).[17]

### 1. Gallimore did not incur adverse employment action in May 2021

First, dispositively, Gallimore was never "terminated" in May 2021. Instead, as a result of Gallimore's consecutive unexcused absences in May 2021, Gallimore was deemed to have abandoned her job and voluntarily resigned from the City pursuant to the City's Administrative Regulation 1-114. See Section I(A)(1), *supra*.

In the absence of any adverse employment action that occurred subsequent to Gallimore's filing of a March 2021 EEOC Charge, Gallimore cannot establish a *prima facie* case of retaliation under Title VII. The City is entitled to judgment on the retaliation claim.

---

[17] Gallimore's filing of a March 2021 Charge of Discrimination constitutes statutorily protected activity.

### 2. Gallimore failed to establish the requisite causal connection between protected activity and claimed adverse employment action[18]

"Title VII retaliation claims must be proved according to traditional principles of but-for causation, not the lessened causation test stated in § 2000e–2(m). This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013); *Mealing v. Ga. Dept. of Juvenile Justice*, 564 Fed. Appx. 421, 426–27 (11th Cir. 2014) (acknowledging that a plaintiff claiming retaliation must show but-for causation); *Smith v. City of Fort Pierce, Fla*., 565 Fed. Appx. 774, 779 (11th Cir. 2014) (affirming summary judgment based on plaintiff's failure to establish but-for causation as element of the *prima facie* case).

A plaintiff satisfies the causation element if she provides sufficient evidence that the *decision-maker knew* of the protected activity and that there was a close temporal proximity between the *decision-maker's awareness* and the adverse action. See, e.g., *Shotz v. City of Plantation*, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003) (Without some showing of awareness by the decision-maker, the causal chain falls apart and the retaliation claim fails); see also *Jones v. Birmingham, City of*, 2022 WL 4393344, at *3 (11th Cir. Sept. 23, 2022) ("It is not enough for the plaintiff to show that someone in the organization knew of the protected expression; instead,

---

[18] Assuming *arguendo* that Gallimore incurred an adverse employment action.

the plaintiff must show that the person taking the adverse action was aware of the protected expression."); *Matamoros v. Broward Sheriff's Off.*, 2 F.4th 1329, 1337 (11th Cir. 2021) ("You can't retaliate against something you don't know exists. And on this record, there is no evidence that the relevant decisionmakers knew of Matamoros's protected activity, so any adverse action taken against her couldn't have been in retaliation for it."); *Stevenson v. City of Sunrise*, 2021 WL 4806722, at *10 (11th Cir. Oct. 15, 2021) ("Stevenson overlooks that she has presented no evidence that [the decision-maker] knew she had complained of discrimination").

Here, the district court properly determined that Gallimore failed to establish the necessary causal connection between Gallimore's filing of a Charge and her claimed termination from the City because the record is devoid of evidence establishing that Pate, as the City's sole and final decision-maker regarding personnel decisions, knew of Gallimore's Charge. [DE 52] at pgs. 6-7 ("Plaintiff does not argue, and the record does not demonstrate, that Pate ever knew that Plaintiff filed an EEOC Charge…[w]ithout showing that Pate was aware of the [protected activity], Plaintiff cannot show a close temporal proximity between Pate's awareness of the protected activity and the [purported] adverse action.").

Gallimore never discussed the Charge with anyone at the City nor did she ever otherwise hear anyone at the City discuss the Charge. [DE 32] at pg. 5, ¶ 27. Indeed, outside of her barebone allegations within her lawsuit and her speculative beliefs,

Gallimore has no evidence that Pate knew of or otherwise discussed her Charge, or that her employment with the City was separated in May 2021 because of her submission of an EEOC Charge. *Id.* at pg. 5, ¶ 28. Gallimore solely argued below that "the City" knew. [DE 41] at pg. 5. That generality is insufficient to establish that Pate, as the City's sole and final decision-maker regarding Gallimore's employment, knew of the Charge. *Jones,* 2022 WL 4393344, at *3.

Gallimore's advancement of an "argument" for the first on appeal that "Ward said she would discuss [the Charge] with the manager …" is equally misguided. I.B. at pg. 15. First, Gallimore failed to "argue" this below and cannot raise it here on appeal for the first time. *Williams-Evans v. Advance Auto Parts*, 843 F. App'x 144, 148 (11th Cir. 2021) (arguments not asserted below will not be considered for the first time on appeal). Regardless, even taking as true Gallimore's contention that Ward told her she "*would* discuss [the Charge] with the manager," the record is devoid of evidence that Ward *actually* discussed the Charge with Pate or that Pate *actually* otherwise knew about the Charge.[19]

And, even if Pate knew about the Charge, there is nothing in the evidentiary record to establish that Pate took any claimed adverse action against Gallimore

---

[19] Gallimore submitted Ward's declaration filed in Dobson's lawsuit against the City as part of her summary judgment submission in this case. See [DE 41-9]. That declaration (secured by Gallimore's and Dobson's shared counsel) says nothing about Gallimore or any relevant issue presented in this case whatsoever. *Id.*

because of the Charge. *Burke v. United States Postal Serv*., 2023 WL 8841352, at *3 (11th Cir. Dec. 21, 2023) ("The only evidence she has proffered in support of her claim is the speculation by her and Linda Chase that Hirsch had known about her EEO activity. But even if Hirsch knew, Burke has provided no evidence, not even a mere scintilla, that she was fired because of any alleged knowledge of her EEO activity.").

In the end, the City's sole and final decision-maker Pate explicitly testified that he never retaliated against Gallimore in any way. [DE 32] at pg. 6, ¶ 32. Outside of her allegations within her lawsuit and her speculative beliefs, Gallimore has no evidence that her employment with the City was separated in May 2021 because of her submission of an EEOC Charge. *Id.* at pg. 5, ¶ 28. In the absence of any record evidence to establish any causal connection between Gallimore's Charge and claimed adverse employment action, the City was and remains entitled to judgment on the retaliation claim. This Court should affirm.

### 3. Gallimore failed to establish that the City's articulated reasons regarding her end-of-employment are pretextual

The *McDonnel Douglas* burden shifting framework applies to Title VII retaliation claims. *Brungart v. BellSouth Telecomms. Inc*., 231 F.3d 791, 798 (11th Cir. 2000). Gallimore failed to establish below that the City's stated reasons regarding her May 2021 separation (i.e., Gallimore's attendance policy violations

which deemed her to have abandoned her job) were pretextual. See Section (I)(A)(4)-(5), supra; [DE 41], generally.

Gallimore likewise makes no effort whatsoever on appeal to substantively address (let alone analyze) pretext in juxtaposition to the circumstances surrounding her departure from the City in May 2021. I.B., generally. Gallimore merely states that "all of the City's proffered reasons are a lie and completely false." I.B. at pg. 17. The City's citation to its attendance policy and Gallimore's attendance issues cannot be false when Gallimore herself explicitly conceded that she was absent for "several days" in May 2021. [DE 32] at pg. 7, ¶ 40.

As there is otherwise no record evidence that the City's stated reasons are false and that the City was motivated by an unlawful intent to retaliate against Gallimore, the City is entitled to judgment on the Title VII retaliation claim. This Court should affirm.

## **CONCLUSION**

The decisions of the district court should be affirmed.

<u>**CERTIFICATE OF COMPLIANCE**</u>

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 9,699 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6).

DATED this 19th day of March 2024.

BY: */s/Christopher J. Stearns*
CHRISTOPHER J. STEARNS
Florida Bar No. 557870

*/s/Jonathan H. Railey*
JONATHAN H. RAILEY
Florida Bar No. 111717

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 19th day of March 2024, I electronically filed the foregoing document with the 11th Circuit Court of Appeals by using the U.S. Court of Appeals CM/ECF, Official Attorney Electronic Document Filing System. I further certify that I either mailed the foregoing document and the Notice of Electronic Filing by first class mail or by electronic mail to any non U.S. Court of Appeals CM/ECF, Official Attorney Electronic Document Filing System participants and/or the foregoing document was served via transmission of Notice of Electronic Filing generated by the U.S. Court of Appeals CM/ECF, Official Attorney Electronic Document Filing System to any and all active participants.

JOHNSON, ANSELMO, MURDOCH, BURKE, PIPER & HOCHMAN, P.A.
***Attorneys for Defendants/Appellees***
2455 E. Sunrise Boulevard, Suite 1000
Fort Lauderdale, Florida 33304
Telephone:   (954) 463-0100
Facsimile:    (954) 463-2444
Stearns@jambg.com
young@jambg.com
railey@jambg.com
lit-assistant@jambg.com

BY*: /s/Christopher J. Stearns*
     CHRISTOPHER J. STEARNS
     Florida Bar No. 557870

     */s/Jonathan H. Railey*
     JONATHAN H. RAILEY
     Florida Bar No. 111717